Filed 2/16/16  P. v. Rodriguez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VICENTE RODRIGUEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B260694<br>(Super. Ct. No. VA132754)<br>(Los Angeles County) |

A trial judge has """'the power, discretion and affirmative duty . . . [to] participate in the examination of witnesses whenever he believes that he may fairly aid in eliciting the truth, in preventing misunderstanding, in clarifying the testimony or covering omissions, in allowing a witness his right of explanation and in eliciting facts material to a just determination of the cause.""''  (Evid. Code § 775, *People v Harris* (2005) 37 Cal.4th 310, 350.)

Vicente Rodriguez appeals from the judgment following his conviction by jury of possession for sale of cocaine (Health & Saf. Code, § 11351) and possession for sale of methamphetamine (Health & Saf. Code, § 11378).  Appellant admitted that he had a prior conviction of possession for sale of a controlled substance.  (Health & Saf. Code, § 11370.2, subd. (a).)  The trial court sentenced him to county jail for five years.  Appellant contends that the trial judge engaged in prejudicial misconduct by becoming too embroiled in the questioning of witnesses.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Case*

On September 24, 2013, Los Angeles County Sheriff 's deputies went to appellant's home to execute a search warrant. Deputy Miguel Beltran presented the warrant to appellant, who said, "Whatever you find it belongs to my friend." Beltran asked appellant to show him the narcotics. He took Beltran to a storage area in the garage and pointed to a brown bag wedged between two plastic storage containers. The bag contained cocaine. Appellant also showed Beltran a filing cabinet in the garage, said it contained narcotics, and pointed to its top drawer. Beltran found a digital scale and a Morton salt container in that drawer. A hidden compartment in the salt container concealed two plastic bags of cocaine and several baggies of methamphetamine. The filing cabinet contained paperwork bearing appellant's name and empty plastic baggies like those used to package narcotics. Beltran searched appellant's Toyota Corolla and found a digital scale and a WD-40 can in the glove compartment. A hidden section of the WD-40 can held plastic baggies of cocaine. Deputy Jeff Hoslet, a K-9 handler, and his dog, Jack, participated in the search. Jack alerted to the presence of narcotics in the garage and Corolla.

Beltran searched the interior of appellant's home, including his bedroom. One pocket of a jacket in his bedroom closet contained about $9,000 in paper currency. The jacket appeared to be appellant's size. Beltran recovered a notebook from appellant's bedroom dresser drawer. Several pages in the notebook resembled the pay and owe sheets that dealers use to document narcotics transactions. Beltran also searched the bedroom of appellant's adult daughter, Irene Rodriguez, and recovered about $11,000 in paper currency. The deputies did not locate any pipes or other drug paraphernalia during the search.

Beltran testified as an expert in the sales and possession of narcotics. He opined that the narcotics recovered from appellant's home were possessed for the purpose of sale. He based his opinion on multiple factors, including the volume and value of the narcotics (several thousand typical doses of methamphetamine, with a combined weight of 11.97 grams, and total value of $11,000, and several hundred doses of cocaine, with a combined weight of 86.38 grams, and total a value of $7,000); as well as the items recovered

with the narcotics, i.e., a digital scale and plastic baggies for packaging; a large amount of cash ($20,000); and pay and owe sheets. In addition, the absence of any paraphernalia for consuming the narcotics suggested they were not possessed solely for personal use.

*Defense Case*

Appellant's daughter, Irene, testified that she kept her savings, in cash, in her home. The $11,000 recovered from her room included a $5,000 tax return and several years' savings from her employment at a Metro PCS and a beauty salon. She testified that appellant derived his income by selling cars. Like Irene, he stored his savings, in cash, in their home. She further testified that from June through September 2013, Edgar Solorio lived in appellant's garage and regularly drove appellant's Corolla.

Solorio testified that he met appellant about 10 years before trial, when appellant sold him a car. Edgar was living in appellant's garage and using appellant's Corolla from June 2013, through late September. Solorio sold cocaine and methamphetamine, which he stored in appellant's garage and Corolla. He did not tell appellant about his narcotics sales. On September 24, Solorio left appellant's home at around 6:00 a.m. He left about $3,000 worth of narcotics in appellant's garage, and left about an ounce of narcotics in a yellow bag, on the floor of the Corolla. When Solorio returned two days later, his narcotics and other possessions were gone. He left immediately and did not return until he learned appellant was facing charges related to Solorio's narcotics.

DISCUSSION

Appellant claims that the trial court engaged in prejudicial misconduct throughout trial. More specifically, he contends that the court interfered with the examination of witnesses in a manner which conveyed the court's bias in favor of the prosecution. "However, he did not object to the trial court's questioning, thus making the claim not cognizable on appeal." *People v. Harris* (2005) 37 Cal.4th 310, 350; *People v. Seumanu* (2015) 61 Cal.4th 1293, 1320.) Waiver aside, we conclude the court did not engage in prejudicial misconduct.

"The object of a trial is to ascertain the facts and apply thereto the appropriate rules of law, in order that justice within the law shall be truly administered.' [Citation.] To

3

this end, 'the court has a duty to see that justice is done and to bring out facts relevant to the jury's determination.' [Citation.] The trial court has a statutory duty to control trial proceedings, including the introduction and exclusion of evidence. [Citation.] As provided by [Penal Code] section 1044, it is 'the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved.'" (*People v. Sturm* (2006) 37 Cal.4th 1218, 1237 (*Sturm*).) The court's participation in the examination of witnesses, without more, is insufficient to establish judicial misconduct because "[a] trial court has both the discretion and the duty to ask questions of witnesses, provided this is done in an effort to elicit material facts or to clarify confusing or unclear testimony. [Citations.]" (*People v. Cook* (2006) 39 Cal.4th 566, 597.) "However, 'a judge should be careful not to throw the weight of his judicial position into a case, either for or against the defendant.' [Citation.]" (*Sturm, supra*, at p. 1237.) In reviewing a claim of judicial misconduct, "'we must determine whether the judge's behavior was so prejudicial that it denied [the defendant] a fair, as opposed to a perfect, trial.' [Citation.]" (*People v. Snow* (2003) 30 Cal.4th 43, 78.)

In claiming judicial misconduct, appellant cites 22 instances in which the trial court intervened in the examination of witnesses. Nineteen interventions occurred during the direct and cross-examination of prosecution witnesses. The interventions occurred during both direct and cross-examination. We have carefully examined the record and conclude that the court's interventions do not rise to the level of judicial misconduct. Some examples of the challenged interventions are described below.

The trial court intervened twice during the prosecutor's examination of Deputy Hoslet, the K-9 handler, before Hoslet responded, to explain the prosecutor's meaning. On the first occasion, the prosecutor asked, "When you say you searched the residence, which portion of the residence did you go to?" Before Hoslet responded, the court interjected, "She means initially." On the second occasion, after the prosecutor posed a question, the court interjected, "She means in relationship to you starting your search." But the court also intervened in a similar fashion during defense counsel's examination of Sergeant Miguel

4

Mejia, who took the video of the search premises. Counsel asked, "And what was your role? Your--What were you actually doing during the search?" Mejia responded, "Well, there is number of things that we are responsible for as sergeant. Um, I don't know --," at which point the court interjected as follows: "I think he's asking particularly what was your particular task that day? Were you guarding a front door? The back door? Taking pictures? Looking for dope? Not your overall duties, but your specific assignment."

Appellant further complains that the court intervened during Beltran's testimony. For example, the court asked him how many times he had previously testified in court as an expert regarding narcotics sales, use, and packaging. Later, when Beltran testified that the total street value of the recovered narcotics was about $18,000, the court asked him how much of that value was attributable to cocaine and methamphetamine, respectively.

Appellant also challenges the trial court's raising and sustaining objections while defense counsel examined witnesses. Generally, the court's objections concerned questions which elicited marginally relevant or cumulative testimony, such as the names of appellant's family members who were detained during the search, and the order of their appearance. Similarly, while questioning appellant's daughter, Irene, defense counsel asked the names and ages of her siblings. After defense counsel established that officers escorted appellant from his home to the patrol vehicle, the court sustained its own objection to additional questions about the "steps from the house to the car." The court also raised and sustained objections to questions of an argumentative nature. For example, appellant's counsel asked Beltran whether it was surprising, or whether it would be expected, that officers would find various documents bearing appellant's name in the filing cabinet in his garage. In sustaining and raising its own objections, the court reasonably exercised its duty to control trial proceedings, including the presentation and exclusion of evidence. (Pen. Code, § 1044.) We note that court sustained its own objection to a segment of the prosecution expert's testimony as beyond the scope of his expertise, and admonished the prosecutor for asking a witness (Solorio) an argumentative question, in the absence of any objection from defense counsel.

Appellant further complains that trial the court "repeatedly interjected his own descriptions of what was taking place" in a video of the search exhibit as it was played for the jury. Our review discovered that the court properly made neutral, descriptive comments for the record. There is no suggestion that any such comment was inaccurate.

The court's interventions largely consisted of questions or comments which would elicit material facts, clarify confusing or unclear testimony (*People v. Cook, supra*, 39 Cal.4th at p. 597) and "control all proceedings during the trial, and . . . limit the introduction of evidence and the argument of counsel to relevant and material matters . . . ." (Pen. Code, § 1044; *Sturm*, *supra*, 37 Cal.4th at p. 1237.) In claiming the court committed misconduct, appellant relies primarily on *Sturm,* where our Supreme Court reversed a death penalty judgment due to the trial court's pervasive misconduct. (*Id*., at pp. 1230, 1245.) He argues that, as in *Sturm*, "the trial judge's behavior created the impression that he was allied with the prosecution 'by intervening in a significantly uneven fashion and making comments that such interventions were made in the prosecutor's stead.'" (*Id.*, at pp. 1241, 1242.)

Appellant's reliance on *Sturm* is unavailing. The *Sturm* trial court "repeatedly and improperly disparaging defense counsel, which conveyed to the jury that the message that the court was allied with the prosecution." (*Sturm*, *supra*, 37 Cal.4th at p. 1240.) The court told defense counsel his line of questioning was "going nowhere;" said counsel was "not grasping my ruling;" accused counsel of "purposely trying to 'sneak' in improper evidence;" and described defense counsel to the jury as having "*supposedly* learn[ed] the rules of evidence" in law school." (*Id.*, at pp. 1235, 1240, 1243; *People v. Banks* (2014) 59 Cal.4th 1113, 1160, overruled on other grounds by *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3.) In addition, the court advised jurors that "99 percent of the time he had ruled against defense counsel." (*Sturm*, *supra*, 37 Cal.4th at p. 1242.) The court also "belittled defense witnesses on several occasions," which "conveyed to the jury the unfortunate message that the trial judge did not take seriously the testimony of the defense experts." (*Id*., at pp. 1233, 1240.)

The conduct of the court presiding over appellant's trial does not approach the pervasive prejudicial judicial misconduct in *Sturm*. The court did not disparage defense

counsel, treat him discourteously, or convey the message that it did not take defense witnesses seriously. Further, before the jury began its deliberations, the court instructed it, "Do not take anything I said or did during the trial as an indication of what I think about the facts, the witnesses, or what your verdict should be." (CALCRIM 3550.) It is presumed the jury understood and followed the instruction. (*People v. Harris* (2005) 37 Cal.4th 310, 350.)

Moreover, even if the court had engaged in misconduct, such error would be harmless under any standard of review, in view of the strong evidence of appellant's guilt. (*People v. Harris, supra*, 37 Cal.4th at p. 372; *Chapman v. California* (1967) 386 U.S. 18; *People v. Watson* (1956) 46 Cal.2d 818.) Finally, we reject appellant's claim that trial counsel rendered ineffective assistance of counsel by failing to object to judicial misconduct. In order to prevail on such a claim, a defendant "must establish not only deficient performance . . . but also resultant prejudice." (*Strickland v. Washington* (1984) 466 U.S. 668, 694.) The overwhelming evidence supporting appellant's convictions precludes his establishing the requisite prejudice to establish that counsel was ineffective.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:


GILBERT, P. J.


YEGAN, J.

7

John A. Torribio, Judge

Superior Court County of Los Angeles

_____


Kimberly Howland Meyer, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Idan Ivri, Deputy Attorney General, for Plaintiff and Respondent.